IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:09-CV-263-FL

GORDON E. BOYCE, PATRICIA A.　　)
BOYCE, and OTHER CUSTOMERS OF　)
WACHOVIA SECURITIES, LLC,　　　　)
SIMILARLY SITUATED to be NAMED　)
CLASS MEMBERS,　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　)　　　**MEMORANDUM AND**
　　　　　　　　　　　　　　　　　)　　　**RECOMMENDATION**
WACHOVIA SECURITIES, LLC,　　　　)
JEFFREY BEAVER, JAMES W.　　　　　)
APPLEWHITE, III, and BILL　　　　　)
BRYANT,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　)

This case comes before the court on the motion of plaintiffs Gordon E. Boyce, Patricia A.

Boyce, and the putative class, other similarly situated customers of Wachovia Securities, LLC,

(collectively "plaintiffs"), to remand this case to Wake County Superior Court (D.E. 12) and the

motions by defendants Wachovia Securities, LLC ("Wachovia"), Jeffrey Beaver, James W.

Applewhite, III, and Bill Bryant (collectively "defendants") to deny class certification (D.E. 15) and

to compel arbitration (D.E. 17). The parties have briefed the motions,[1] and they have been referred

to the undersigned Magistrate Judge for review and recommendation, pursuant to 28 U.S.C. §

636(b)(1)(B). For the reasons set forth below, it will be recommended that plaintiffs' motion to

---

[1] Plaintiffs included the argument in support of their motion for remand in the motion itself. Their failure to
file a separate memorandum violated Local Rule 7.1(d), E.D.N.C., and further violation of this requirement will be dealt
with appropriately. Plaintiffs' memoranda in response to defendants' class certification and arbitration motions are at
D.E. 21 and D.E. 22, respectively. The memoranda by defendants supporting their class certification and arbitration
motions are at D.E. 16 and 18, respectively, and their response to plaintiffs' motion at D.E. 20.

remand be denied and defendants' motion to deny class certification and motion to compel arbitration be denied without prejudice.

## BACKGROUND

### I. PROCEDURAL HISTORY

This action arises out of agreements wherein defendants agreed to provide certain investment services to plaintiffs. (Compl. (D.E. 1-2) 8 ¶ IV). The action was originally brought in Wake County Superior Court on 1 June 2009. (*Id.* 1). On the same day, plaintiffs filed a motion for a temporary restraining order requesting that defendants be ordered to provide plaintiffs certain investment records related to plaintiffs' accounts. (*Id.* 26-31). Following a hearing on 4 June 2009, the Superior Court granted the motion and ordered defendants to produce the requested documents.[2] (*Id.* 38-40).

On 17 June 2009, defendants removed the case to this court on the grounds of federal question jurisdiction. (Notice of Removal (D.E. 1)). On the same day, plaintiffs filed the instant motion to remand. On 20 July 2009, defendants filed their answer. (Answer (D.E. 14)). The same day, defendants filed their motions to deny class certification and to compel arbitration.

### II. PLAINTIFFS' ALLEGATIONS

#### A. Claims Related to Plaintiffs' Investment Accounts

Plaintiffs allege that they entered into an agreement with Wachovia for investment services in or shortly after 2004 and had an ongoing fiduciary relationship with Wachovia until about 25 November 2008. (Compl. ¶ V). They claim that in the course of this relationship, defendants

---

[2] In their memorandum in support of their motion to deny class certification, defendants assert that they complied with this order on 29 June 2009. (Defs.' Memo. 2).

breached their fiduciary duties and violated certain federal and state laws in the following ways: making false statements and omitting or failing to fully disclose all material facts related to plaintiffs' accounts (*id.* ¶ VI); failing to provide requested documents (*id.* ¶ VII); engaging in secret self-dealing with respect to money in plaintiffs' cash accounts, including taking money without authorization (*id.* ¶ VIII); violating plaintiffs' express instructions by purchasing with plaintiffs' funds certain securities called "Auction Rate Securities" (or "ARS") and "Municipal Auction Rate Securities" (or "MARS") (*id.* ¶¶ IX, XXI-XXVI); buying Puerto Rico bonds without plaintiffs' authority and then secretly selling them at a substantial loss (*id.* 14 ¶ "XVI"[3]); charging, in violation of the agreement between the parties, excessive and undisclosed fees and mark-ups, including fees that were "greater than all other of [Wachovia's] customers and of all customers in the United States" (*id.* ¶¶ XIII, XIV- XX).

Plaintiffs contend that these acts by defendants are in violation of section 10(b)(5) of the Securities Exchange Act, 15 US.C. § 78j(b); Rule 10b-5, 17 C.F.R. § 240.10b-5; section 17(a) of the Securities Act, 15 US.C. § 77q(a); the Investment Advisers Act, 15 U.S.C. § 80b-6; and sections 78C-8 and 75-1, *et seq.* of the North Carolina General Statutes. (*Id.* ¶¶ XXVII-IX, XXXII-III).

**B.** **Class Allegations**

Plaintiffs seek to represent a putative class of defendants' customers that also had "a fiduciary relationship with one or more of the Defendants relating to purchases and sales of municipal bonds." (Compl. ¶ II). The complaint alleges that, like plaintiffs, members of the putative class entered into contracts with defendants for investment services (*id.* ¶ IV), that defendants did not disclose to them the fees charged for municipal bond transactions (*id.* ¶ XV), and that defendants made false claims

---

[3] The number of this paragraph, which is the last paragraph on page 14, appears to be incorrect.

to members of the putative class that no profit was made from MARS investments handled in their accounts (*id.* ¶ XXVI). While these particular allegations expressly reference the putative class, there are other allegations in the complaint that relate to the breach of the investment services agreement (*e.g.*, the charging of fees above the agreed amounts (*see id.* ¶ XIII)) that could arguably apply to the putative class as well as to plaintiffs individually. For the purpose of the court's analysis, any such ambiguities in the complaint will be construed in favor of the plaintiffs and in favor of a class allegation. *See Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 655 (D. Nev. 2009) ("[W]hen a party moves to deny class certification prior to any discovery, the Court construes it under the legal standards for a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss."); *Blihovde v. St. Croix County, Wis.*, 219 F.R.D. 607, 614 (W.D. Wis. 2003) ("[W]hen there has been no discovery and the defendants challenge class certification on the basis of the allegations in the complaint only, the proper standard is the same as a motion to dismiss for failure to state a claim.").

## DISCUSSION

### I. PLAINTIFFS' MOTION TO REMAND

#### A. Priority of the Motion to Remand

The resolution of plaintiffs' motion to remand will determine whether this court is a proper forum for further proceedings in this case, including specifically defendants' motions to deny class certification and to compel arbitration. *See, e.g., Welborn v. Classic Syndicate*, 807 F. Supp. 388, 391 (W.D.N.C. 1992) (allowing plaintiff's motion to remand on the basis of a forum selection clause even though the contract also contained an arbitration provision). The court will therefore turn first to consideration of the motion to remand.

4

## B.    Applicable Principles of Removal and Remand

The court's analysis begins with a review of basic principles governing removal and remand. Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts . . . have original jurisdiction, may be removed by the defendant or defendants, to the district court . . . for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(c). The cases over which the district courts have original jurisdiction and which may therefore be removed are those arising under the Constitution, laws, or treaties of the United States," so-called federal question cases.[4] *Id.* § 1331. Where a case with federal claims is properly removed, the court possesses supplemental jurisdiction over the state law claims asserted in the complaint that arise out of the same set of facts. *See id.* § 1367 (a); *Martin v. Lott*, No. 3:07-3782-JFA, 2009 WL 5195960, at *2 (D.S.C. 21 Dec. 2009) ("Pursuant to 28 U.S.C. § 1367, a district court also has jurisdiction over state law claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

Under 28 U.S.C. § 1446(a), a case is removed by the filing of a notice of removal in the district court. When there are multiple defendants, each defendant must join in or otherwise consent to the notice of removal subject to exceptions not applicable in this case.[5] *See Hensley v. Irene*

---

[4] Removal is also appropriate in cases involving diversity jurisdiction. While plaintiffs' motion references the diversity of the parties and the minimum amount in controversy, defendants here removed the case on federal question grounds, and not on the basis of diversity. Issues relating to diversity are accordingly not germane because § 1441(b) authorizes removal in federal question cases "without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). Plaintiffs also make arguments relating to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 78bb(f)(1), (2), which provides for the removal and federal preemption of certain court class actions relating to securities covered by the act. These arguments are not relevant because, among other reasons, defendants did not remove this case under SLUSA.

[5] Decisions in the Fourth Circuit typically identify three exceptions. "A defendant need not join in or consent to the notice of removal if: (1) the non-joining defendant has not been served with service of process at the time the notice of removal is filed; (2) the non-joining defendant is merely a nominal or formal party; or (3) the removed claim is independent of one or more non-removable claims against the non-joining defendant." *Parker v. Johnny Tart Enters.*

5

*Wortham Ctr., Inc.*, No. 1:07cv403, 2008 WL 2183946, at *4 (W.D.N.C. 4 April 2008); *Parker v. Johnny Tart Enters. Inc.*, 104 F. Supp. 2d 581, 583 (M.D.N.C. 1999). Here, all defendants have joined in the removal, and plaintiffs have not raised any procedural challenges to the removal of this case.

The courts have recognized that "[b]ecause removal jurisdiction raises significant federalism concerns, [courts] must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F. 3d 148, 151 (4th Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)); *see also Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) ("In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."). The removing parties, as those invoking removal jurisdiction, have the burden of showing that removal was proper. *See Hodges v. Demchuk*, 866 F. Supp. 730, 732 (S.D.N.Y. 1994) (citing *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) ("the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof")).

On the instant motion, plaintiffs request that this entire case be remanded to Wake County Superior Court or, in the alternative, that the state claims be severed and remanded while the federal claims remain and be stayed pending resolution of the state claims in state court. The court will address plaintiffs' requests for relief in turn below.

_____

*Inc.*, 104 F. Supp. 2d 581, 583 n.3 (M.D.N.C. 1999). As noted, here all defendants join in the removal, and thus the exceptions are inapplicable.

6

## C. Remand of Entire Case

Plaintiffs do not dispute that they have asserted federal claims in this lawsuit. They argue, in part, however, that the federal claims are incidental and not pertinent to the dominant state claims, and that the court should accordingly remand the case to state court. (Pls.' Mem. 2). This contention by plaintiffs is both factually and legally unfounded.

Factually, federal law violations occupy a central role in plaintiffs' complaint. The complaint expressly accuses defendants of violating federal law (Compl. XXVII) and specifically refers to a number of federal statutes and regulations, including Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) (*id.* XXIX, A); Rule 10b-5, 17 C.F.R. § 240.10b-5 (*id.*, B, E); Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a) (*id.* C, D); 15 U.S.C. § 80b-6 (*id.* F).

Legally, the degree of dominance of the federal claims here is inapposite to the existence of federal question and removal jurisdiction. If a federal claim is expressly asserted, the case comes within the court's federal question jurisdiction and is thereby within the court's removal jurisdiction under § 1441(a). *See Trexler v. Privette*, No. 3:09-02172, 2009 WL 3446760, at *2 (D.S.C. 20 Oct. 2009) (noting that removal is appropriate when claims in state court complaint arise under federal law). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)). Here, based on the allegations just reviewed, the existence of federal question is apparent on the face of the complaint. Accordingly, this case falls within the court's federal question jurisdiction and thereby its removal jurisdiction. The court cannot relinquish jurisdiction over the federal claims

7

simply because they are accompanied by state claims (or otherwise). "Possessing federal-question jurisdiction, the district court was obliged to exercise it; it had no authority to decline the case simply because it believed that it would be better for the case to proceed in state court." *In re Mills*, 287 Fed. Appx. 273, 278 (4th Cir. 29 July 2008).

Plaintiffs also seek remand of the entire case on the grounds that the state court has exclusive jurisdiction over the non-federal claims. Again, plaintiffs' contention is meritless.

As noted, federal courts are expressly permitted to exercise supplemental jurisdiction over state law claims if they "form part of the same case or controversy" as claims that are properly within the jurisdiction of the federal court. 28 U.S.C. § 1367(a); *Isaac v. North Carolina Dept. of Transp.*, 192 Fed. Appx. 197, 199 (4th Cir. 11 July 2006); *White v. County of Newberry*, 985 F.2d 168, 171 (4th Cir. 1993) (finding court could exercise supplemental jurisdiction over federal and state law claims with "a common nucleus of operative fact"). Whether federal and state law claims form part of the same case "is determined by whether they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try then all in one judicial proceeding." *Hinson v. Norwest Financial South Carolina, Inc.*, 239 F.3d 611, 615 (4th Cir. 2001) (internal citation and punctuation omitted); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole.").

Here, there can be no question, and plaintiffs do not appear to argue otherwise, that plaintiffs' state claims are intertwined with and arise out of the same set of facts and circumstances as the

8

federal claims. Indeed, each cause of action asserted in the complaint relies on the same set of facts surrounding defendants' alleged mismanagement of plaintiffs' municipal bond securities accounts. Plaintiffs have not identified any particular set of facts that relate to only their state claims or that would be logical to try separately. Accordingly, the court may properly exercise supplemental jurisdiction over the state law claims and exclusive jurisdiction over them does not lie with the state court, as plaintiffs contend. For this and the other reasons stated, it will be recommended that the portion of plaintiffs' motion seeking remand of the entire case be denied.

### D.    Partial Remand

In the alternative, plaintiffs move for severance and remand of the state claims.[6] There are circumstances under which a district court may remand state law claims over which it could otherwise exercise removal jurisdiction. Such permissive remand may be ordered with respect to certain separate and independent state claims, pursuant to § 1441(c), or to certain claims within the court's supplemental jurisdiction, pursuant to § 1367(c). *Martin v. Lott,* 2009 WL 5195960, at *2 (D.S.C. 21 Dec. 2009). The court will examine permissive remand regarding each type of claim.

### 1.    *Separate and Independent Claims*

Section 1441(c) permits remand in federal question cases of separate and independent claims in which state law predominates. *Hinson,* 239 F.3d at 616. As explained above, none of plaintiffs' state law claims can be characterized as separate and independent of the federal claims. The alleged claims all arise from a common nucleus of operative facts, that is, the defendants' alleged breach of

---

[6] While not critical on the present analysis since the court ultimately concludes that the exercise of supplemental jurisdiction is appropriate, the particular state claims that plaintiffs are asserting are not patently clear. Plaintiffs' motion suggests that they have asserted state law claims for breach of contract, breach of fiduciary duty, fiduciary fraud in execution of the contract, and common law fraud, but none of these claims is expressly alleged in their complaint.

9

contract and fiduciary duty in connection municipal bond transactions. The court therefore finds

remand of plaintiffs' state law claims pursuant to § 1441(c) inappropriate. *See Martin*, 2009 WL

5195960, at *3 (finding remand under § 1441(c) inappropriate where state claims were not separate

and independent of federal claims).

###       2.       *Claims with Supplemental Jurisdiction*

Section 1367(c) authorizes a district court to decline to exercise supplemental jurisdiction

that it otherwise has over a state law claim where "(1) the claim raises a novel or complex issue of

State law, (2) the claim substantially predominates over the claim or claims over which the district

court has original jurisdiction, (3) the district court has dismissed all claims over which it has

original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for

declining jurisdiction." 28 U.S.C. § 1367(c).

Here, plaintiffs' arguments appear to center on the second factor, that the state law claims

predominate over the federal claims. Predominance is assessed through a consideration of the proof

offered on the asserted claims, the scope of the issues raised, and the comprehensiveness of the

remedy sought. *Gibbs*, 383 U.S. at 726-27; *Deshazo v. Smith*, 1:05CV1046, 2005 WL 3416839, at

*2 (E.D. Va. 8 Dec. 2005) ("Declining supplemental jurisdiction based on 28 U.S.C. § 1367(c)(2)

involves proof that state issues substantially predominate, whether in terms of proof, of the scope

of the issues raised, or of the comprehensiveness of the remedy sought.") (internal citations

omitted)); *Bagley v. Provident Bank*, No. Civ. WDQ-05-0184, 2005 WL 1115245, at *1 (D. Md. 26

Apr. 2005) ("To 'substantially predominate,' however, a state claim must be more important, more

complex, more time consuming to resolve, or in some way more significant than its federal

counterpart.") (citations omitted)). "The Fourth Circuit has held that declining to exercise

10

jurisdiction on a finding of predomination is for the purpose of avoiding federal interference with state enforcement schemes." *NGM Ins. Co. v. Secured Title and Abstract, Inc.*, No. 3:07CV536, 2008 WL 1858884, at *3 (E.D. Va. 22 Apr. 2008) (citing *White v. County of Newberry, S.C.*, 985 F.2d 168 (4th Cir. 1993)); *Holley v. Harper*, No. 5:06-cv-00425, 2007 WL 580573, at *5 (S.D. W.Va. 21 Feb. 2007) (Section 1367(c)(2) "should be invoked 'where a state claim forms the real body of the case, to which the federal claim is only an appendage.'") (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 789 (3rd Cir. 1995)).

Applying the predominance test here, there is no suggestion that the proof on the federal and state law claims would differ. Remanding the state law claims would therefore call for duplicative efforts by the parties in both forums. Moreover, it does not appear that the issues in the state claims are more complex or any broader than those in the federal claims.[7] The similarity of issues presents the risk of inconsistent results. Nor would the remedies generally differ. Finally, there is no indication that federal court jurisdiction over the state claims would interfere with state enforcement schemes. Thus, the state claims do not predominate over the federal claims within the meaning of § 1367(2).

Consideration of the other factors under § 1367 also fails to show that remand is appropriate. With respect to the first factor, the state claims do not present novel or particularly complex issues of state law. *See* 28 U.S.C. § 1367(1). The third factor is inapplicable because the court has not dismissed all claims over which it has original jurisdiction or any other claims. *See id.* § 1367(3). Nor does this case present exceptional circumstances that provide other compelling reasons for

---

[7] Indeed, plaintiffs acknowledge that the federal claims are the "more complicated" of the claims. (Pls.' Mem. 5).

11

declining jurisdiction. *See id.* § 1367(4). To the contrary, considerations of judicial economy, convenience, and fairness to litigants all weigh in favor of the exercise of supplemental jurisdiction over all of plaintiffs' claims.

It will accordingly be recommended that the portion of plaintiffs' motion seeking remand of the state law claims be denied. The court having already rejected the other portions of plaintiffs' motion, the entire motion should be denied.

## II. DEFENDANTS' MOTION TO DENY CLASS CERTIFICATION

Defendants seek an order denying class certification in this action pursuant to Federal Rule of Civil Procedure 23. To be certified as a class action under Rule 23, an action must meet the requirements of both subsections (a) and (b) of Rule 23. *Haywood v. Barnes*, 109 F.R.D. 568, 575 (E.D.N.C. 1986). The burden of proving satisfaction of these requirements rests with the parties seeking class certification. *Garcia v. Veneman*, 211 F.R.D. 15, 18 (D.D.C. 2002) (citing *McCarthy v. Kleindienst*, 741 F.2d 1406, 1414 n.9 (D.C. Cir. 1984)). Rule 23(a) requires that a precisely defined class exist and that the proposed class representatives be members of the putative class. *Id.*; 109 F.R.D. at 576; *see East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("a class representative must be a part of the class"). In addition, the four prerequisites expressly set out in Rule 23(a) must be satisfied. *Id.* They are that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("the typicality requirement"); and (4) the representative parties will fairly and adequately protect the interests of the class ("the adequacy requirement"). Fed. R. Civ. P. 23(a).

12

If the prerequisites under Rule 23(a) are met, the action must then satisfy one of the three alternative sets of requirements under Rule 23(b). *Id.* (b). These requirements are that:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. . . . .

Fed. R. Civ. P. 23(b)(1)-(3).

When appropriate, an action may be maintained as a class action with respect to particular issues. *Id.* (c)(4). In addition, a class may be divided into subclasses that are each treated as a class. *Id.* (c)(5).

Defendants contend that this action fails to meet both the typicality requirement in Rule 23(a)(3) because plaintiffs have interests that conflict with the putative class members and the adequacy requirement in Rule 23(a)(4) because plaintiff Gordon E. Boyce, who is an attorney, seeks to be appointed class counsel. Defendants also argue that the case satisfies none of the requirements of Rule 23(b). Plaintiffs respond that defendants' motion regarding class certification is premature

13

and that discovery on class certification is required before the court can determine the issue. The court agrees.

Rule 23 expressly requires that a court determine the question of class certification "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). But "it is finally and ultimately the discretion of the court to determine the most appropriate point in the proceedings for certification." *Jiron v. Sperry Rand Corp. (Sperry-Univac)*, 423 F. Supp. 155, 167 (D. Utah 1975); *see also* 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1785.3 (3d ed. 2009) ("The time at which the court finds it appropriate to make its class-action determination may vary with the circumstances of the particular case.").

As defendants point out, there are occasions when it is appropriate to determine class certification at the pleading stage before the parties have conducted any discovery. Specifically, courts have held that it is "appropriate to dismiss the class allegations if the plaintiff does not allege facts sufficient to make out a class" and where "plaintiff could establish no facts to make out a class." *Bessette v. Avco Fin. Servs., Inc.*, 279 B.R. 442, 450 (D.R.I. 2002); *see also Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008) ("In some instances, the propriety *vel non* of class certification can be gleaned from the face of the pleadings."). To prevail at this early stage, defendants "have the burden of demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove." *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484, 1495 (D.S.C. 1991). The justification for an early determination of class certification is the prevention of "a waste of the parties' resources and judicial resources to conduct discovery on class certification." *Walls v. Wells Fargo Bank, N.A.*,

14

262 B.R. 519, 523 (Bankr. E.D. Cal. 2001); *see also Vinole v. Countrywide Home Loans, Inc.*, 246 F.R.D. 637, 639 (S.D. Cal. 2007) (holding that "a defense-driven determination of class certification is appropriate when awaiting further discovery will only cause needless delay and expense" (internal quotations and citations omitted), *aff'd*, 571 F.3d 939 (9th Cir. 2009).

Nevertheless, the weight of authority leans heavily in favor of determining class certification after further evidentiary development through discovery. *See, e.g.,* Wright, at § 1785.3 (noting that "courts frequently have ruled that discovery relating to the issue whether a class action is appropriate needs to be undertaken before deciding whether to allow the action to proceed on a class basis"). The Fourth Circuit has held that "[i]t is seldom, if ever, possible to resolve class representation questions from the pleadings, and where facts developed during discovery proceedings are inadequate, an evidentiary hearing should be held on the request of the parties or, if necessary for a meaningful inquiry into the requisites of Rule 23, by the court *sua sponte*." *International Woodworkers of America, AFL-CIO v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268 (4th Cir. 1981). The court further emphasized that "it is essential that a plaintiff be afforded a full opportunity to develop a record containing all the facts pertaining to the suggested class and its representatives." *Id.*; *see also Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 66-67 (N.D.N.Y. 2008) ("[A] court should delay a certification ruling until information necessary to reach an informed decision is available."). "Indeed a district court may be reversed for premature certification if it has failed to develop a sufficient evidentiary record from which to conclude that the requirements of [Rule 23(a)] have been met." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982); *see also Huff v. N.D. Cass Co. of Ala.*, 485 F.2d 710, 713 (5th Cir. 1973) (holding that a determination on class certification "usually should be predicated on more information than the complaint itself

15

affords" (internal quotations and citations omitted)). When a court does choose to rule on class certification before discovery, "then it should err in favor and not against the maintenance of the class action." *Jones v. Diamond*, 519 F.2d 1090, 1098 (5th Cir. 1975) (internal quotations and citations omitted).

In determining the appropriate timing of the certification decision, the comments to Rule 23(c) suggest that the court might need additional time to: (1) gather evidence relevant to the certification decision; (2) determine how the case will be tried, (3) determine whether defendant would prefer "to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified"; and (4) gather information about the appointment of class counsel. Fed. R. Civ. P. 23(c)(1), advisory committee notes, 2003 amend. As one court suggested, the class certification determination "should be made at a time when the trial court has had adequate opportunity to acquaint itself with the case and the complexities likely to be encountered in its disposition." *Link v. Mercedes-Benz of North America, Inc.*, 550 F.2d 860, 864 (2d Cir. 1976).

After a thorough review of the allegations in plaintiffs' complaint as well as defendants' arguments in support of their motion, the court concludes that denial of class certification at this early stage of the proceedings would be premature. While the court expresses no opinion as to whether any of plaintiffs' claims should ultimately proceed as a class action, the court will briefly explain why it believes addressing the merits of defendants' motion to deny certification is unwarranted at the present time.

One of the core claims raised in the complaint is that defendants breached a standard form client agreement with its customers (*i.e.*, the named plaintiffs and all other clients who entered into

16

this standard agreement). (Compl. ¶¶ IV, XIII[8]). These allegations, at their simplest, present a claim for breach of a common agreement by a common course of conduct by defendants that is generally suited for class treatment. *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) (finding that common legal and factual questions existed in action against an automobile insurer for breach of contract where: "(1) all putative class members have signed substantively identical or similar form agreements with [defendant]; and (2) [defendant]'s practice of taking 'betterment' deductions is a common course of conduct that has affected all putative class members"); *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1417 n.19 (N.D. Ill. 1996) (holding that plaintiffs had satisfied the commonality requirement of Rule 23 where all proposed class members signed a standard lease contract with defendant and their claims all involve the common question of whether this form lease violated the disclosure requirements of the Consumer Leasing Act).

The court acknowledges that the complaint contains certain arguably individual allegations with respect to the breach of this agreement. For example, defendants point to plaintiffs' assertion that they were charged prices "greater than all other of its customers and of all customers in the United States on numerous occasions." (Compl. ¶ XIV.a.). However, to the extent that plaintiffs are more broadly asserting that the putative class members were all charged fees in excess of the form agreement, the actual amount the named plaintiffs were over-charged would not necessarily defeat ultimate certification of a class. The Fourth Circuit has recognized that the necessity of individual damage determinations does not destroy typicality requirement of Rule 23(a). *See*

---

[8] While defendants assert that one of the alleged fee schedules (*see* Compl. ¶ VIII) was unique to plaintiffs' accounts, the court finds the complaint ambiguous on this point. Thus, the court has construed this ambiguity in favor of plaintiffs for the purpose of its analysis.

17

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 427-28 (4th Cir. 2003). "In fact, Rule 23 explicitly envisions class actions with such individualized damage determinations." *Id.* at 428.

This example also serves to demonstrate that additional evidence, such as the actual fees charged to other clients for the same services and transactions, will be critical in determining whether plaintiffs' claims are typical of the putative class. Importantly, because this is evidence that only defendants possess, to deny certification without adequate discovery would present plaintiffs with a seemingly insurmountable barrier. "To pronounce finally, prior to allowing any discovery, the non-existence of a class or set of subclasses, when their existence may depend on information wholly within defendants' ken, seems precipitate and contrary to the pragmatic spirit of Rule 23." *Yaffe v. Powers*, 454 F.2d 1362, 1366 (1st Cir. 1972). At bottom, because most of plaintiffs' claims against defendants arise out of a relationship established with defendants via a standard agreement executed by some number of other clients, plaintiffs are entitled to at least some minimal form of discovery to ascertain the extent to which their claims are common to those other customers. The extent to which the named plaintiffs' claims, even those that arguably appear to be individual in nature, could apply to the putative class as a whole, is not clear on the face of the complaint.

The lack of a developed evidentiary record also precludes this court's adequate consideration of whether the named plaintiffs have conflicts of interest with other members of the putative class such that they cannot satisfy the adequacy requirement of Rule 23(a)(4). Further, while defendants assert that as a class member plaintiff Gordon E. Boyce may not serve as class counsel, the court notes that no such request has yet been made in this action. Because this issue is not even before the court, it cannot serve as a basis to deny class certification.

18

The issues raised by defendants in their argument under Rule 23(b) also suggest the necessity of further development of the record. For example, defendants argue that the determination of whether a mark-up on a municipal bond is excessive must be determined on a case-by-case basis under the factors set out by the Municipal Securities Rule Making Board, thereby making such claims inappropriate for a class action. But defendants' argument presumes that the alleged excessive mark-ups were *applied* on a transactional basis. In other words, the excessive nature of the disputed mark-ups may have no relation to the transactions themselves, and could have been in the form of a standard amount applied to the municipal bond transactions for all of the putative class. Defendants have made similar presumptions of individuality related to the alleged inadequate or fraudulent disclosures made to plaintiffs. (*See* Defs.' Mem. 14 n.10). It is not clear from the allegations in the complaint that the actions challenged by plaintiffs are unique to them as defendants contend.

Again, the court emphasizes that it draws no conclusions, preliminary or otherwise, as to the strength of defendants' arguments; only that to properly decide the class certification issue in a complex case such as this, the court requires additional information to avoid a determination based on inappropriate speculation. *See Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 21-22 (2d Cir. 2003) (holding that the district court acted prematurely by denying class certification before discovery given that nothing was known about the composition of class or size of recovery that provider might face thereby rendering the court's predictions about the manageability of case speculative). This position is consistent with the level of review courts have made in cases similar to this. For example, in *Morris v. Wachovia Securities, Inc*, 223 F.R.D. 284 (E.D. Va. 2004), the district court was faced with a class certification motion in an action, similar to the instant one,

19

against an investment advisor for securities fraud and violations of the Investment Advisers Act. In conducting its thorough analysis, the court had the benefit of examining not only the standard form agreement defendant entered into with each of the putative class members, but also a "universe of information" which included the marketing brochure, the oral and written disclosures made by the defendant's financial advisors, the trade confirmation reports, and other monthly and periodic reports received by investors. *Id.* at 290. The district court relied heavily on these documents in its well-reasoned and thorough ruling on the class certification motion. The court believes this case deserves no less careful consideration and review.

There is another consideration present in this case that counsels against proceeding too early with the class certification determination. As discussed in the next section, the determination on class certification will directly affect which, if any, claims are referred to arbitration, assuming the arbitration agreements are applicable to the claims at issue. Thus, the determination on class certification concerns not simply the manner in which claims will proceed in this case, but potentially whether they will proceed in this court at all.

In sum, the court concludes that the record is not sufficiently developed at this stage of the proceedings to properly determine whether some or all of plaintiffs' claims may be maintained as a class action. Accordingly, it will be recommended that defendants' motion to deny class certification be denied without prejudice to their right to refile it following appropriate discovery on the class certification issue.

20

## III.  DEFENDANTS' MOTION TO COMPEL ARBITRATION

Defendants seek arbitration of this case pursuant to the arbitration provision in three of the securities brokerage agreements with plaintiffs[9] that are the subject of this action. The motion should be denied.

Each of the three arbitration provisions contains a clause that expressly excludes putative class actions from the arbitration requirement.  This clause reads as follows:

> No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the Client is excluded from the class by the court. Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

(Unterberg Aff. (D.E. 17-2), Ex. B (D.E. 17-3) 21[10]; Ex. D (D.E. 17-4) 16; Ex. F (D.E. 17-4) 24).

Assuming without deciding that the arbitration provisions apply to plaintiffs' claims, the practical effect of this clause is to tie the determination on arbitration in this case to the determination on class certification.  The recommendation just discussed is that the determination of the class certification issue be deferred until further development of the record.  Consistent with this recommendation, the court finds that the determination of the arbitration issue is premature as well.  Because it cannot properly be determined at this time which, if any, claims should be certified as class action claims, it cannot now properly be determined which, if any claims, should be

---

[9] Plaintiff Gordon E. Boyce is party to one of the agreements, and plaintiff Patricia A. Boyce is party to the remaining two agreements.

[10] Page number references in citations to the Unterberg Affidavit are to the numbers assigned by the CM/ECF electronic docketing system.

submitted to arbitration. It will therefore be recommended that defendants' motion to compel arbitration be denied without prejudice to their right to refile it after the court has ruled on the class certification issue.

## CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that:

1.    Plaintiffs' motion to remand (D.E. 12) be DENIED;

2.    Defendants' motion to deny class certification (D.E. 15) be DENIED WITHOUT PREJUDICE; and

3.    Defendants' motion to compel arbitration (D.E. 17) be DENIED WITHOUT PREJUDICE.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have 14 days, or such other period as the court specifies, to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

SO ORDERED, this 17th day of February, 2010.

James E. Gates
United States Magistrate Judge

22